**SEABOARD MARINE SERVICE CORPORATION, Employer Plaintiff Appellant,**

and

**The State Insurance Fund, Insurance Carrier Plaintiff Appellant,**

v.

**Arnold J. QUIGLEY, Deputy Commissioner for the 2nd Compensation District of the United States Department of Labor, Bureau of Employees' Compensation, Defendant Appellee,**

and

**Kaare Peterson, Employee Defendant Appellee.**

United States District Court
S. D. New York.
Feb. 3, 1958.

Charles G. Tierney, Gen. Atty. of the State Ins. Fund, New York City, for plaintiffs.

Louis Bloch, New York City, for Kaare Peterson.

SUGARMAN, District Judge.

Kaare Peterson, an employee of the Seaboard Marine Service Corporation, was injured in the course of his employment on January 21, 1950. His employment was within the coverage of the Longshoremen's and Harbor Workers' Compensation Act.[1] The employer's carrier began paying compensation to the employee as provided for in the Act at the rate of $35 per week from January 22, 1950 which at that time was the maximum allowed by the Act.[2] On December 4, 1951 the employee served and filed a notice of election to sue a third

party (Waterman Steamship Company) for damages resulting from the injuries he sustained. On December 5, 1951 further payments of compensation were stopped as a result of said notice. The State Insurance Fund, as the insurance carrier for Seaboard Marine Service Corporation, had paid to Peterson $3,410 compensation at $35 a week for the 97 3/7 weeks from January 22, 1950 to December 5, 1951. On January 16, 1952 the parties were advised that the carrier had expended $1,967.21 for medical disbursements. On or about April 15, 1954 the carrier gave its consent to a settlement made between Peterson and Waterman in the sum of $25,000.

The $25,000 settlement fund was distributed:

| | |
|---|---|
| For legal fees and expenses of the third party suit | $ 9,622.79 |
| Reimbursement of the carrier for compensation | 3,410.00 |
| Reimbursement of the carrier for medical benefits | 1,967.21 |
| To Peterson | 10,000.00 |

Thereafter, upon Peterson's claim for deficiency compensation alleging total disability, the Deputy Commissioner made an award against the employer and carrier in favor of the employee by granting maximum compensation[3] from January 22, 1950 to July 6, 1957, a period of 389 weeks at $35 a week, making a total of $13,615, less the $10,000 previously retained by Peterson out of the proceeds of the settlement of the third party suit and ordered the balance of $3,615 to be paid to the employee.

In computing the "excess" compensation to which the employee was entitled, the Deputy Commissioner determined that the amount recovered by Peterson against Waterman was the $10,000 which had been retained by the employee.

The award recites in part:

"That the employer, Seaboard Marine Service Corp. and the in-

1. 33 U.S.C.A. § 901 et seq.

2. 33 U.S.C.A. § 906(b).

3. Note 2 supra.

surance carrier, The State Insurance Fund, shall pay to the employee compensation as follows:

"389 weeks at $35.00 per week from January 22, 1950 to July 6, 1957, inclusive, which is $13,615.00 for permanent total disability, less the credit of $10,000.00 or a balance of $3615.00 which amount the employer and the carrier [are] Directed to pay forthwith to the employee in one sum, less attorney fee hereinafter provided, and to continue payments thereafter to the employee in bi-weekly installments at $35.00 per week until otherwise ordered."

The employer and carrier commenced suit in this court[4] on August 19, 1957 praying that the Deputy Commissioner

"modify such findings of fact, order, opinion and award as aforesaid and restraining him from enforcing said order and award herein pursuant to the provisions of the Act and granting credit on account of future compensation payments to the plaintiffs herein in the sum of $13,410.00 instead and in place of the sum of $10,000.00 heretofore granted by him * * *"

After issue joined, plaintiffs now move for summary judgment.

The employer and carrier contend that they should receive as a credit against the amount payable on account of Peterson's injury not only the $10,000 retained by him as above mentioned but also the $3,410 paid to him as compensation and returned to the employer and carrier out of the settlement fund.

The employee contends that the Deputy Commissioner was correct.

The plaintiffs must prevail.

The Act in part here pertinent provides:

"If the person entitled to compensation or the representative elects to recover damages against such third person and notifies the Secretary of his election and institutes proceedings within the period prescribed in section 913 of this title, the employer shall be required to pay as compensation under this chapter a sum equal to the excess of the amount which the Secretary determines is payable on account of such injury or death over the amount recovered against such third person."[5]

It has been held that

"the entire scheme of the Act negates any theory that an injured employee is entitled to both compensation from his employer and damages from third parties * * *"[6]

Peterson first received compensation aggregating $3,410 for the period from January 22, 1950 to December 5, 1951 in the form of voluntary payments made to him by the plaintiffs.

His claim against the third party Waterman was settled with the plaintiffs' consent for $25,000. That was his recovery although it was subject to certain liens and expenses. One of these was the plaintiffs' claim for reimbursement of $3,410, paid to Peterson by them for the period January 22, 1950 to December 5, 1951. Had the plaintiffs not made these earlier voluntary payments and thus not established their lien on the proceeds of the settlement, Peterson would have retained $13,410 of the $25,000 and not the $10,000 as he did.

■ The statutory scheme is that an injured employee receive compensation from his employer or its carrier regardless of fault but if fault is found against a third party, the compensation advanced to the employee be refunded to the employer or its carrier out of the recovery of the employee against the negligent third party.[7]

4. 33 U.S.C.A. § 921.

5. 33 U.S.C.A. § 933(f).

6. Fontana v. Pennsylvania R. Co., D.C. S.D.N.Y.1952, 106 F.Supp. 461, 463.

7. 33 U.S.C.A. § 933(e) (1) (A) and (g).

 At the moment when the plaintiffs received the $3,410 reimbursement out of the proceeds of the settlement, Peterson was essentially in the position of having been advanced the $3,410 by the plaintiffs and of having repaid it out of his recovery from Waterman. It cannot be disputed that, no matter in what form, Peterson got and kept the $3,410.

Later the Deputy Commissioner made an award for the period January 22, 1950 to July 6, 1957, at the same maximum rate of $35 per week. This award included the period January 22, 1950 to December 5, 1951, for which Peterson had already been paid as aforesaid. If plaintiffs are compelled to pay the award without credit for the $3,410 included therein, Peterson will have been doubly imbursed for the period involved, once by Waterman in the settlement and again by the plaintiffs under the award.

Arithmetically, what the Deputy Commissioner has done is award Peterson for 389 weeks a weekly sum in excess of $43 for, under his order, Peterson will have pocketed

| | |
|---|---|
| a – The voluntary compensation originally paid or its equivalent from the third party settlement | $ 3,410.00 |
| b – The $10,000 credited in the order | 10,000.00 |
| c – The balance which the order requires plaintiffs to pay Peterson | 3,615.00 |
| Total | $17,025.00 |

This the statute forbids[8] even though the order is later in date to the 1956 amendments to the Act.

In the final analysis, there is no plausible distinction between the $10,000 credited by the Deputy Commissioner against the award and the $3,410 disallowed as a credit. The plaintiffs should be credited with $13,410 against the $13,615 award.

The plaintiffs shall have summary judgment for the relief demanded in the complaint.

It is so ordered.

---

8. 70 Stat. 654, § 9, c. 735, July 26, 1956, 33 U.S.C.A. § 906 note.